UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MEE JIN-JO,

                        Plaintiff,

v.

JPMC SPECIALTY MORTGAGE LLC,

                        Defendant.
_____

**REPORT AND RECOMMENDATION**

08-CV-00230(A)(M)

JPMC SPECIALTY MORTGAGE, LLC,

                        Third-Party Plaintiff,

v.

ADVANCED MOVING & STORAGE, LLC,

                        Third-Party Defendant.
_____

        Before me is the motion of defendant JPMC Specialty Mortgage, LLC ("JPMC") for summary judgment [235].[1] For the following reasons, I recommend that JPMC's motion be denied.

## BACKGROUND

        Plaintiff rented a house located at 187 West 5th Street in Corning, New York from its owner Mihee Cho for approximately five years. JPMC's Statement of Material Facts [238-1], Statement No. 1; plaintiff's deposition transcript [234], pp. 10-11. She resided at the premises with her husband and 16 year old daughter. Plaintiff's deposition transcript [234], pp. 25-26. In

_____

[1]        Bracketed references are to the CM/ECF docket entries.

April 2006, JPMC (f/k/a WM Specialty Mortgage LLC)[2] commenced an action to foreclose a mortgage secured by the premises, and JPMC was the successful bidder at the foreclosure sale, which occurred on November 14, 2006, prompting it to commence eviction proceedings against Mihee Cho and the John Doe occupants. JPMC's Statement of Material Facts [238-1], Statement Nos. 2-5.[3]

Although plaintiff disputes that she was properly served with either the 10-day Notice to Quit the Premises or the Petition For a Final Judgment of Possession and Warrant of Eviction (plaintiff's Response to Defendant's Statement of Material Facts [241], pp. 10-11 of 33, ¶¶3,4), a Warrant of Eviction was signed on February 22, 2007, directing the Steuben County Sheriff "to remove Mihee Cho and all other occupants from said premises, and put the Petitioner in full possession thereof." JPMC's Statement of Material Facts [238-1], Statement No. 8.

Plaintiff concedes that she received advance notice of the eviction, which occurred on March 23, 2007. Id., Statement Nos. 9, 10; plaintiff's Response to Defendant's Statement of Material Facts [241], p. 7 of 33, ¶5.[4] According to plaintiff, this did not provide her with sufficient time to remove her belongings, so she called JPMC's attorney and requested additional time, but this request was refused. She also called the Sheriff's Office and was erroneously advised that, as a no-fault tenant, her property would be delivered to her new home

---

[2] JPMC's Reply Memorandum of Law [49], p. 5 n. 2.

[3] JPMC's attorneys in this case also represented it in the eviction. Knuckles Affidavit [238], p. 1 of 4.

[4] Although plaintiff admits that she was given 72 hours advance notice of the eviction (JPMC's Statement of Material Facts [238-1], Statement No. 9; plaintiff's Response to Defendant's Statement of Material Facts [241], p. 7 of 33, ¶5), she also states that "[s]he was given *less than* 72 hours". Plaintiff's Response to Defendant's Statement of Material Facts [241], p. 7 of 33, ¶7.

in Buffalo, New York. JPMC's Statement of Material Facts [238-1], Statement No. 12; plaintiff's Response to Defendant's Statement of Material Facts [241], p. 7 of 33, ¶7; plaintiff's deposition transcript [234], pp. 22-23, 27-29.

Plaintiff testified that on the day of the eviction, the Sheriff arrived with one or two unidentified female representatives of JPMC, and that JPMC's representatives advised her that she could not retain her chandelier, refrigerator, gas stove, and other items located in the barn, claiming that some were fixtures. Plaintiff's deposition transcript [234], pp. 31-32; plaintiff's Memorandum of Points and Authorities [241], p. 16 ("Defendant's representative stole her woodstove, gas stove, 2 chandeliers, large dog kennel, portable garden windmill and garden decos, cooking stove, security video camera network, and etc"). Plaintiff also testified that the Sheriff gave her three minutes to vacate her home. Plaintiff's deposition transcript [234], p. 35.

AMC Mortgage Services, acting as the mortgage servicer for JPMC, retained a real estate agent for the sale of the premises, who in turn selected Advanced Moving & Storage ("Advanced") to act as the moving and storage company for the eviction. JPMC's Statement of Material Facts [238-1], Statement Nos. 19-21. [5] According to plaintiff, she was not provided with an inventory of the removed property at the time of the eviction, and was not informed of the moving company's name or address. Plaintiff's deposition transcript [234], p. 39.

---

[5] Plaintiff's Complaint named Triple C Transportation Co., Inc. d/b/a Advanced Moving & Storage, LLC as a defendant. Before issue was joined, Judge Siragusa issued an Order to Show Cause concerning whether the court had subject matter jurisdiction over the action, given the common New York citizenship between plaintiff and Triple C Transportation Co., Inc. [5], pp. 7-8. In response, plaintiff argued that she was not a citizen of New York, but requested in the alternative, that Triple C be dismissed. Acting on plaintiff's alternative request, Triple C was dismissed, without prejudice. Judge Arcara's December 15, 2008 Decision and Order [7], pp. 5-7. A third-party action was later commenced by JPMC against Advanced [178], and a Clerk's Entry of Default was obtained [186].

When plaintiff called Advanced, she was advised that she had 30 days to pick up her property. Id., pp. 41-42, 47. Approximately five days after the eviction she drove two hours from Buffalo to Advanced's headquarters in Elmira, New York with a large van to retrieve her property. Id., pp. 43, 46. When she arrived at Advanced's headquarters, she was told by an individual named Lisa that she could not pick up her property because the move was not complete. Id., pp. 43-45.

When plaintiff observed some of her property in the warehouse and requested her toolbox, she was told that it would cost $500 to release it. Id., pp. 44-45. Lisa, Advanced's representative, telephoned JPMC's representative so that plaintiff could schedule a meeting. Id., p. 85. When plaintiff met JPMC's representative, she asked for the return of her refrigerator, gas stove, chandelier and other items, but the representative refused. In response to plaintiff's request for the return of the property being held by Advanced, JPMC's representative said, "it's done. I think she said it's done, it's not my business any more. She said . . . you can talk to the moving company directly . . . and she gave me only - - funny thing was, rice and Coke from the inside". Id., pp. 86-88.

Plaintiff returned to Advanced in the beginning of April and was advised by Advanced that she would have to take all of her property at one time, but was prohibited from taking her property piecemeal, so she left without any of her property. Id., pp. 52-57, 59. A couple of days later she returned and was given an inventory of her property, which was the only document she was provided in connection with the removal and storage of her property. Id., pp. 59-60, 64; deposition exhibit A, which is annexed to the deposition transcript. She was again told that she would have to remove all of her property at once, or could not "have any property at

all". Id., p. 61. When asked why she did not hire a moving company to remove all of her property from Advanced's warehouse, she testified that she could not "afford the money". Id., p. 83.

Plaintiff did not physically return to Advanced again. Id., p. 63. Instead, she contacted the New York State Attorney General and learned that Advanced's license was suspended. Id., pp. 63-64. In opposition to JPMC's motion, plaintiff relies on a series of documents from the New York State Department of Transportation indicating that as of October 2006, the operating authority of Triple C Transportation Co., Inc. d//b/a Advance Moving & Storage Company[6] to engage in transportation of household goods was cancelled. Plaintiff's appendix of evidence [241-1], p. 4 of 25, Evidence 2.[7] She also includes an October 2009 e-mail from clabello@dot. state.ny.us, stating that "[t]he authority of Triple C Transportation Co., Inc. . . . is still in suspension". Id.

By letter dated April 19, 2007, plaintiff advised JPMC that Advanced was "willfully refus[ing] to release her property", and asked that it produce its service agreement with JPMC, a copy of its policy and terms, and a copy of the storage fee. Plaintiff's appendix of evidence [241-1], p. 4 of 25, Evidence 4. In a follow-up letter dated May 23, 2007, she advised JPMC that Advanced's license was suspended, and continued with letters dated June 18, August 24, September 8 and October 28, 2007, advising JPMC that her property had not been returned. Id. She never received a response to these letters. Plaintiff's deposition transcript [234], p. 65.

---

[6] Although this appears to be a different entity from the third-party defendant, which is identified as Advanced Moving & Storage, LLC, JPMC does not raise this issue.

[7] JPMC does not contest the admissibility of any of plaintiff's submissions offered in opposition to its motion.

She also repeatedly called Advanced and left messages, but her calls were not returned, which prompted plaintiff to believe that Advanced had ceased its operations. Id., pp. 66, 69-70. It was not until she initiated this lawsuit that Advanced contacted her to advise her that it was selling her property because she had not paid the storage fee of approximately $4,000. Id., pp. 67-68.

Plaintiff's remaining claims are for (1) conversion, (2) a violation of New York's "Truth-in-Storage" Act, N.Y. Gen. Bus. Law §§605-610, and (3) intentional torts.[8]

## ANALYSIS

**A.     Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is well settled. "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

---

[8] Plaintiff's other claims were dismissed by Judge Arcara at the outset of the case in response to JPMC's motion for dismissal. Jin-Jo v. JPMC Specialty Mortgage LLC, 2009 WL 2424344, *7 (W.D.N.Y. 2009) (Arcara, J.).

## B. Conversion Claim

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession". Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50 (2006). JPMC argues that plaintiff's conversion claim must be dismissed "because the evidence demonstrates that there is no genuine issue of material fact that the eviction was conducted in accordance with the mandates of the law, and as such *the removal and storage* of Plaintiff's personal property was not 'unlawful' or 'unauthorized' but rather was authorized by law; implemented by the Corning City Court, and executed by the Steuben County Sheriff." JPMC's Memorandum of Law [236], p. 12 (emphasis added).

JPMC's argument misconstrues the basis of plaintiff's conversion claim, which alleges that JPMC did not allow her to take "her personal properties including woodstove, gas heater, chandelier, large dog kennel, garden windmill, etc." Complaint [1], ¶9. These items were separate and distinct from those removed by Advanced and placed in storage. *See* Plaintiff's deposition transcript [234], pp. 31-32; plaintiff's Memorandum of Points and Authorities [241], p. 21 of 33 ("Defendant's representative stole her woodstove, gas stove, 2 chandeliers, large dog kennel, portable garden windmill and garden decos, cooking stove, security video camera network, and etc"). JPMC offers no evidence disputing this aspect of plaintiff's version of events. Therefore, I recommend that JPMC's motion to dismiss plaintiff's conversion claim be denied.

## C. Truth-in-Storage Act Claim

Under New York's Truth-in-Storage Act, "[a]ny consumer bailor damaged by an unlawful detention of his goods or any other violation of this article may bring an action for recovery of damages and the return of his goods." N.Y. Gen. Bus. Law §609(1). In denying JPMC's motion to dismiss plaintiff's Truth-in-Storage Act claim, Judge Arcara held that "[a]lthough defendant argues in its motion that plaintiff should have maintained this case against a moving company no longer named, the plain language of Section 609(1) does not prevent plaintiff from establishing during discovery, if she can, that defendant somehow helped bring about an unlawful detention of her property." Jin-Jo, 2009 WL 2424344 at *4. With discovery now complete, JPMC argues that "the facts demonstrate that JPMC did nothing unlawful in obtaining the warrant of eviction or retaining the moving & storage company, and cannot be held liable for any allegedly wrongful acts of the moving & storage company or the Steuben County Sheriff." JPMC's Memorandum of Law [236], p. 8. I disagree.

According to JPMC, "[t]he only true fact . . . Plaintiff has disputed is service of the 10-day Notice to Quit, Petition and Notice of Petition. However, Plaintiff's allegation that she did not receive the eviction documents does not create a 'genuine' issue of fact for trial." JPMC's Reply Memorandum of Law [242], p. 2. I agree with JPMC that the "process server's affidavit of service with respect to service of a '10 Day Notice to Quit with Referee's Deed' constitute[s] *prima facie* evidence of proper service". United States Bank National Association v. Patterson, 102 A.D.3d 858, 859 (2d Dep't. 2013). However, plaintiff has rebutted this presumption with more than what JPMC characterizes as a "conclusory denial of receipt".

-8-

JPMC's Reply Memorandum of Law [242], p. 3. She has submitted printouts purportedly from the United States Postal Service website of tracking results for the certified mail receipts attached to the process server's affidavit of service for the 10-day Notice to Quit Premises [234-5], which appear to show the delivery of these documents occurring in Horseheads, New York, rather than Corning, New York. [241-1], pp. 21-23 of 25.[9]

Alternatively, relying upon Kleeman v. Rheingold, 185 A.D.2d 118, 119 (1st Dep't. 1992), JPMC argues that "[a] process server is an independent contractor and a party cannot be held vicariously liable for any wrongful act by a process server where the affidavit of service is in proper form." JPMC's Reply Memorandum of Law [242], p. 4. However, JPMC ignores that Kleeman was overrruled in relevant part. *See* Kleeman v. Rheingold, 81 N.Y.2d 270, 273 (1993) (rejecting the argument that an attorney could evade legal responsibility for the negligent conduct of a process server).

Even assuming that the eviction was proper, I disagree with JPMC that the facts demonstrate that it did nothing wrong in its retention of Advanced. "For over 80 years, it has been clear in New York that a marshal has the right to remove a tenant's property of value still left in an apartment more than 72 hours after the tenant has been served with a warrant of eviction. If such property is removed by the marshal at the landlord's request or by the landlord, the landlord is responsible for the cost of storing the property for a reasonable period until it is claimed by the tenant. If the landlord stores the items in a third party's storage facility, then after

---

[9] JPMC does not dispute the admissibility of these submissions. In any event, I conclude that they are admissible as public records pursuant to Fed. R. Evid. 803(8). *See* Masuku v. Bank of America, N.A., 2012 WL 3528006, *2, n. 26 (S.D.Tex. 2012); Chapman v. San Francisco Newspaper Agency, 2002 WL 31119944, *2 (N.D.Cal. 2002).

30 days, section 7-206 of the Uniform Commercial Code provides the best guidance regarding how the parties should proceed." Wilson v. CRL Management, Inc., 14 Misc.3d 231, 232-233 (Rochester City Ct. 2006).[10]

JPMC argues that it was only responsible for paying for the cost of storing plaintiff's property, and attempts to insulate itself from the conduct of Advanced by characterizing Advanced as an independent contractor. JPMC's Memorandum of Law [236], p. 9. However, "since the landlord hired the moving company, it becomes the agent of the landlord". Marcado v. Weinheim, 108 Misc.2d 81, 84 (NY Civil Ct. Bronx Cty. 1981).

Even if Advanced could be characterized as an independent contractor, there are "numerous exceptions" to the "general rule, [that] a principal is not liable for the acts of an independent contractor", including "where the employer is negligent in its selection of selecting, instructing or supervising the independent contractor". Saini v. Tonju Associates, 299 A.D.2d 244, 245 (1st Dep't. 2002). The fact that Advanced's license was suspended raises an issue as to whether JPMC was negligent in its selection of Advanced to perform the removal and storage of

---

[10] U.C.C. § 7-206 provides, in relevant part, that: "(a) A warehouse, by giving notice to the person on whose account the goods are held and any other person known to claim an interest in the goods, may require payment of any charges and removal of the goods from the warehouse at the termination of the period of storage fixed by the document of title or, if a period is not fixed, within a stated period not less than 30 days after the warehouse gives notice. If the goods are not removed before the date specified in the notice, the warehouse may sell them pursuant to Section 7-210.

. . .

(d) A warehouse shall deliver the goods to any person entitled to them under this article upon due demand made at any time before sale or other disposition under this section."

plaintiff's property. Although plaintiff sent JPMC numerous letters advising it that Advanced was refusing to release her property and that its license was suspended ([241-1], pp. 13-18 of 25), JPMC did not intercede, thereby also raising questions as to whether it was negligent in its supervision of Advanced.

Relying upon Funding Assistance Corp. v. Mashreq Bank, PSC, 277 A.D.2d 127, 128 (1st Dep't. 2000), JPMC further argues that it was not a constructive bailee of plaintiff's property, and, as such, owed no duty to plaintiff. JPMC's Memorandum of Law [236], p. 7. In Funding Assistance Corp., the landlord and tenant and had agreed to a stipulation of settlement, where the plaintiff tenant agreed to the entry of a judgment of possession in exchange for a stay of that judgment's execution, but when the "plaintiff vacated [prior to the expiration of the stay], it chose . . . not to take its personal property", which the plaintiff then sought seven years later. Id. at 127. Under those circumstances, the court concluded that "defendant was not and could not have been deemed a constructive bailee of plaintiff's property . . . because prior to vacating the premises, pursuant to the Judgment of Possession and Stipulation of Settlement, plaintiff did not, at any time before the date of the execution, make any arrangements whatsoever with its landlord to keep the property in safekeeping for its benefit." Id. at 128. By contrast, here there is no indication that plaintiff chose to not to take her personal property from the premises, or that she abandoned it.

JPMC also attempts to cast responsibility upon plaintiff for her failure to remove the property when she received notice of the eviction. JPMC's Memorandum of Law [236], p. 9. However, the fact that plaintiff did not remove her property before the eviction did not absolve JPMC of its duties to plaintiff with respect to her personal property. While JPMC also argues

that plaintiff failed to avail herself of the opportunity Advanced provided her to collect her property free of charge (id., p. 10), Advanced's offer was hardly unfettered. According to plaintiff, Advanced imposed a prohibitive restriction requiring her to take the house full of items all at once *or none at all*. On one occasion it also requested that she pay $500 to obtain just her tool box.

Therefore, I recommend JPMC's motion to dismiss plaintiff's Truth-in-Storage Act claim be denied.

**D.    Intentional Tort Claim**

JPMC describes this claim as relying "on essentially the same facts as the Truth-in-Storage Act and conversion claims", and repeats its arguments directed at these claims. JPMC's Memorandum of Law [236], pp. 12-13. For these reasons discussed above, I likewise recommend that this portion of JPMC's motion be denied.

**CONCLUSION**

For these reasons, I recommend that JPMC's motion for summary judgment [235] be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by August 30, 2013 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: August 13, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge